UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:26-CV

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMZI AHMED'S PERSONAL PROPERTY, SPECIFICALLY DESCRIBED AS:<br><br>$103,600.00 in U.S. CURRENCY (24-DEA-716645),<br><br>$99,194.00 in U.S. CURRENCY (24-DEA-716590),<br><br>$302,262.66 HELD IN BANK OF AMERICA ACCOUNT ENDING IN XXXX2968 (24-IRS-000486),<br><br>$399,826.02 HELD IN WELLS FARGO BANK, N.A. ACCOUNT ENDING IN XXXX2185 (24-IRS-000488), and<br><br>$525,359.42 HELD IN TRUIST ACCOUNT ENDING XXXX8703 (24-IRS-000487),<br><br>Defendants. | ) | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff, United States of America, by and through the United States Attorney for the Eastern District of North Carolina, states as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) providing for the forfeiture of moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, or money used or intended to be used to facilitate violations of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*., and property constituting or derived from proceeds traceable to specified unlawful activity.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355(a). The Court has in rem jurisdiction by virtue of 28 U.S.C. § 1355(b). Venue in this district is proper by virtue of 28 U.S.C. §§ 1355(b) and 1395(b).

## DEFENDANTS *IN REM*

3. Defendants *in rem* consist of the following:

a. $103,600.00 in U.S. currency (24-DEA-716645) seized by law enforcement agents pursuant to a search warrant executed at NC Vape Zone Distribution, Inc., 704 Beacon Lake Drive, Raleigh, North Carolina, Wake County on September 24, 2024,

b. $99,194.00 in U.S. currency (24-DEA-716590) seized by law enforcement agents pursuant to a search warrant executed at Ramzi A. Ahmed's residence in Wake County on September 24, 2024,

c. $302,262.66 held in Bank of America account ending in XXXX2968 in the name of NC Vape Zone Distribution, Inc. (24-IRS-000486), seized by law enforcement agents pursuant to a seizure warrant executed at a local Bank of America branch office in Wake County on September 30, 2024,

d. $399,826.02 held in Wells Fargo Bank, N.A. account ending in XXXX2185 in the name of Zone Distribution Inc. (24-IRS-000488), seized by law enforcement agents pursuant to a seizure warrant executed at a local Wells Fargo Bank branch office in Wake County on September 30, 2024, and

e. $525,359.42 held in Truist account ending XXXX8703 in the name of NC Vape Zone Distribution, Inc. (24-IRS-000487), seized by law enforcement agents pursuant to a seizure warrant executed at a local Truist Bank branch office in Wake County on September 30, 2024.

4. Defendants U.S. $103,600.00 in currency (24-DEA-716645) and $99,194.00 in U.S. currency (24-DEA-716590) (collectively, Defendant U.S. currency) are all presently located in the Seized Asset Deposit Fund Account maintained by the United States Marshal for the Eastern District of North Carolina, within the jurisdiction of this Court.

5. Defendants $302,262.66 held in Bank of America account ending in XXXX2968 (24-IRS-000486), $399,826.02 held in Wells Fargo Bank, N.A. account ending in XXXX2185 (24-IRS-000488), and $525,359.42 held in Truist account ending XXXX8703 (24-IRS-000487) (collectively, Defendant funds), are all presently located in a Suspense Account maintained by the United States Department of Treasury, within the jurisdiction of this Court.

## CLAIMS

6. The potential claimants in this action are Ramzi A. Ahmed, NC Vape Zone Distribution, Inc. (hereinafter, "NC Vape Zone"), and Zone Distribution, Inc.

7. On December 18, 2024, NC Vape Zone submitted a claim to the DEA through its attorney, Elliot Abrams, asserting an interest in the $103,600.00 in U.S. currency, and $99,194.00 in U.S. currency.

8. On January 6, 2025, Ramzi A. Ahmed submitted a claim to the Internal Revenue Service through his attorney, Elliot Abrams, asserting his and NC Vape Zone Distribution, Inc.'s interests in the $302,262.66 held in Bank of America account ending in XXXX2968, and $399,826.02 held in Wells Fargo Bank, N.A. account ending in XXXX2185. Ramzi A. Ahmed and NC Vape Zone Distribution, Inc. also asserted an interest in $525,359.42 held in a Truist bank account ending in XXXX8703, which based on the amount in question was not eligible for administrative forfeiture under 19 U.S.C. § 1607(a).

**STATUTORY BASIS FOR FORFEITURE**

9. The United States alleges Defendant U.S. currency and Defendant funds are forfeitable to the United States under 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 981(a)(1)(C), for violations of 21 U.S.C. §§ 801 *et seq*. Defendants U.S. currency and funds are forfeitable to the United States under 21 U.S.C. § 881(a)(6) because they are money or other things of value furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to such an exchange, or were used or intended to be used to facilitate violations of federal controlled substance laws.

10. Title 21, United States Code, Section 881(a)(6) provides that the following shall be subject to forfeiture to the United States and no property right shall exist in them:

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

11. Title 18, United States Code, Section 981(a)(1)(C) provides the following shall be subject to forfeiture to the United States and no property right shall exist in them: "[a]ny property, real or personal, that constitutes or is derived from proceeds traceable to" an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense.

12. Title 21, United States Code, Section 841 makes it a crime for any person to knowingly possess a controlled substance with intent to distribute that controlled substance.

13. Title 21, United States Code, Section 846 makes it a crime to conspire to violate a provision of Title 21. Section 846 provides that any person who attempts or conspires to commit any offense defined in that subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

14. As set forth in Title 18, United States Code, Sections 1956(c)(7) and 1961(1)(D), the definition of "specified unlawful activity" includes, inter alia, "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

## INTRODUCTION

15. Beginning in 2024, the DEA, Army Criminal Investigation Division, Internal Revenue Service Criminal Investigation (IRS-CI), and various local

agencies, including the Fayetteville Police Department and the Hope Mills Police Department, began an investigation into the sale of controlled substances at area businesses.

16. Many of these businesses are commonly referred to as “Vape Shops” or “Smoke Shops.” The investigation revealed that the businesses were distributing and selling marijuana under the guise that the products were legal hemp-derived Tetrahydrocannabinol (THC) derivatives. This was discovered through a large-scale controlled purchase campaign where various products were bought from multiple locations and later subjected to laboratory testing and determined to be a controlled substance.

17. Many of the businesses where controlled purchases were made or search warrants were executed, were selling items with “hemp” labels or a disclaimer that the product contained less than 0.3% concentration of Delta-9-THC; however, when tested by certified laboratories, the products purchased tested above the 0.3% concentration and were legally considered to be marijuana.

## FACTS

18. Alhamzah Ahmed is one of Ramzi A. Ahmed’s sons.

19. On December 4, 2017, Ramzi A. Ahmed submitted articles of incorporation with the State of North Carolina Department of the Secretary of State, which created the legal entity known as NC Vape Zone.

20. Ramzi A. Ahmed is listed as the incorporator, registered agent, and only company officer for the legal entity known as NC Vape Zone.

21. NC Vape Zone's business address is 704 Beacon Lake Drive, Raleigh, North Carolina.

22. On February 23, 2024, Ramzi A. Ahmed submitted articles of incorporation with the State of North Carolina Department of the Secretary of State, which created the legal entity known as Zone Distribution Inc., with a business address of 704 Beacon Lake Drive, Raleigh, North Carolina, the same address registered to NC Vape Zone.

23. Zone Distribution Inc., and NC Vape Zone shared the same location, personnel, and operated for the same purpose.

24. Alhamzah Ahmed and Ramzi A. Ahmed are co-owners of a Chase Bank account they used for NC Vape Zone business purchases.

25. From April 2024 to August 2024, the Wells Fargo Bank, N.A. account ending in XXXX2185 was held in the name of Zone Distribution, Inc. and used as an operating account for NC Vape Zone.

26. GS Imports Incorporated, 3800 Tryon Rd., Suite F, Raleigh, North Carolina, sold products identified as the brands "GOLD SILVER" branded pre-rolls, "LOST THC" branded pre-rolls, and "LOST THC" branded vape pens to various vape shops, including NC Vape Zone.

27. The registered agent of the business is listed as Hua Wu ("Wu").

28. Wu also operated his business under the name "LT Imports" as well as GS Imports.

29. In July 2024, law enforcement agents made controlled purchases from vape shops throughout Fayetteville, North Carolina, and Hope Mills, North Carolina, and the surrounding areas.

30. Between July 15, 2024, and September 5, 2024, undercover law enforcement agents and confidential sources directed by law enforcement purchased over 100 readily available commercially sold products suspected to be controlled substances in violation of federal law.

31. The products purchased from these locations consisted of vape pens or electronic cigarettes, pre-rolled cigarillos, and suspected loose marijuana flower/bud.

32. Law enforcement agents sent samples from the purchased items to the DEA laboratory and Delta 9 Analytics laboratory (ISO Accreditation with certificates from the DEA and NC Department of Health and Human Services) for further analysis.

33. Test results from the DEA and Delta 9 Analytics laboratories found many of these products contained illegal amounts of Delta-9 THC.

34. On September 17, 2024, law enforcement agents executed a search warrant at Smoke City & EZ Way Tobacco (Smoke City), 6659 Elizabethtown Road in Lumberton, North Carolina.

35. During the search warrant, law enforcement agents seized products, including pre-rolls and loose flower, which were subsequently tested and determined to be marijuana.

36. NC Vape Zone supplied the THC-A pre-rolls and loose flower products which were sold by Smoke City.

37. On September 18, 2024, law enforcement agents executed a search warrant at "Vape Island #2," 7924 South Raeford Road, Fayetteville, North Carolina and seized THC-A pre-rolls and loose flower products supplied by NC Vape Zone.

38. On September 18, 2024, law enforcement agents executed a search warrant at "Discount Tobacco Shop" 528 South Reilly Road, Fayetteville, North Carolina.

39. NC Vape Zone supplied Discount Tobacco Shop with THC-A pre-roll and flower products that contained illegal amounts of Delta-9 THC.

40. On September 24, 2024, law enforcement agents executed search warrants on Wu's residence and GS Import's warehouse location.

41. During the execution of search warrants at these locations, investigators discovered documents detailing payments to and from other businesses involved in this investigation, including NC Vape Zone.

42. Evidence reviewed in the investigation, including bank account analysis, review of NC Vape Zone's inventory system, CIN7, and other sources have shown that between August 2023 and September 2024, Ramzi A. Ahmed issued 39 business checks and official checks totaling $4,402,480.00 to Wu's businesses to pay for illegal marijuana products, through use of the following accounts:

a. First Bank, account number X3562, Zone Distribution Inc.,
b. Truist Bank, account number X8703, NC Vape Zone Distribution, Inc., and

c. Bank of America, account number X2968, NC Vape Zone Distribution, Inc.

43. The funds used by NC Vape Zone to purchase marijuana products from Wu's businesses were derived from criminal proceeds obtained through the sale of illegal marijuana products through NC Vape Zone, as shown in the following analysis:

a. During the period of August 1, 2023, through September 23, 2024, during which, NC Vape Zone used the above-mentioned accounts as operating accounts, according to sales order data obtained from CIN7, NC Vape Zone sold $1,733,100.24 of Gold Silver branded THC-A pre-rolls, and $579,706.50 of Lost THC pre-rolls, products known by this investigation to be illegal marijuana products, and

b. During this same period, NC Vape Zone sold a total of $4,917,580.62 of THC-A pre-rolls of various brands; many of these brands have also been determined to be illegal marijuana products.

*Use of Truist Bank Account X8703 – NC Vape Zone*

44. Truist Bank X8703 served as a business operating account for NC Vape Zone, when NC Vape Zone was selling illegal marijuana products.

45. During the period of January 3, 2022, to September 27, 2024, this account received a total of $89,134,051.48 (credits to the account) and transacted a total of $89,241,036.85 out of the account (debits to the account). The account was closed by Truist Bank following the seizure of funds by law enforcement via a seizure warrant executed on September 30, 2024.

46. Three sales orders, totaling $28,648.80, were traced from the CIN7 Sales Order data for NC Vape Zone to payments made to the Truist Bank X8703, via customer checks. Those three orders are representative and not exhaustive. This tracing included, reviewing CIN7 Sales data to identify orders containing known illegal products, then tracing these sales to the checks paid by customers. All of these payments were for orders containing known illegal marijuana products.

*Use of Bank of America Account X2968 – NC Vape Zone*

47. Bank of America X2968 (BOA X2968) served as a business operating account for NC Vape Zone, when NC Vape Zone was selling illegal marijuana products.

48. During the period of January 3, 2022, to September 30, 2024, this account received a total of $56,230,983.36 (credits to the account) and transacted a total of $56,228,339.80 out of the account (debits to the account).

49. Four sales orders, totaling $41,908.31, were traced from the CIN7 Sales Order data for NC Vape Zone to payments made to the BOA X2968 via customer checks. These four orders are representative and not exhaustive. This tracing included, reviewing CIN7 Sales data to identify orders containing known illegal products, then tracing these sales to the checks paid by customers. All of these payments were for orders containing known illegal marijuana products.

*Use of Wells Fargo Bank Account X2185 – Zone Distribution*

50. Wells Fargo Bank X2185 (WFB X2185) served as a business operating account for the combined business of NC Vape Zone and Zone Distribution, during the period of April 30, 2024, through September 23, 2024, when NC Vape Zone was selling illegal marijuana products.

51. During this period, $2,353,872.25 in checks paid by smoke shops, vape shops, and convenience stores were deposited into WFB X2185.

52. One sales order, totaling $7,720.19, was traced from the CIN7 Sales Order data for NC VAPE ZONE to checks paid to NC VAPE ZONE and deposited into WFB X2185. That order is representative rather than exhaustive. This tracing included, reviewing CIN7 Sales data to identify orders containing known illegal products, then tracing these sales to the checks paid by customers. This payment was for an order containing known illegal products.

53. Wu and his employees delivered the products identified as "GOLD SILVER" branded pre-rolls, "LOST THC" branded pre-rolls, and flower/bud to NC Vape Zone. When deliveries were made to NC Vape Zone, Wu and his employees primarily interacted with Alhamzah Ahmed.

54. Alhamzah Ahmed and Ramzi A. Ahmed knew that the products they purchased from Wu's businesses and resold were illegal marijuana and not hemp.

55. On September 24, 2024, law enforcement agents executed a search warrant at the NC Vape Zone warehouse in Raleigh, North Carolina. Law enforcement agents seized thousands of boxes of THC products, including pre-rolls

and loose flower, from the warehouse and located two bundles of cash totaling $103,600.00 in U.S. currency from inside two safes. The products seized matched products that had previously been purchased through controlled purchases, and subsequently tested positive for marijuana.

56. A Hope Mills Police Department official deployed a K-9 trained to detect the presence of illegal narcotics and the K-9 positively alerted when it sniffed the $103,600.000 in bulk cash.

57. On September 24, 2024, law enforcement agents simultaneously executed a search warrant at Ramzi A. Ahmed's residence in Fuquay-Varina, North Carolina.

58. Ramzi A. Ahmed, Alhamzah Ahmed, and five females were present when law enforcement agents executed the search warrants.

59. Law enforcement agents advised Ramzi A. Ahmed of his right to remain silent and after they advised him of his rights, he waived right to remain silent and was interviewed.

60. During his interview, law enforcement agents advised Ramzi A. Ahmed that making an untruthful statement to federal law enforcement agents could result in a criminal charge under 18 U.S.C. § 1001.

61. Ramzi A. Ahmed provided information, including, but not limited to, the following:

a. He is the sole owner of NC Vape Zone and performs all management duties at NC Vape Zone and does not receive any help regarding shipping and receiving of products,

b. He owns Zone Distribution, Inc. and that business is now closed,

c. He owns the warehouse from which he operates NC Vape Zone,

d. He also sells THC-A products from his warehouse,

e. He pays for the THC-A products primarily with wire transfers and business checks from his Wells Fargo and Bank of America accounts held in the name of his business,

f. NC Vape Zone is his sole source of income, and he does not know how much money NC Vape Zone generates, and

g. He does not have bulk cash in his residence.

62. Ramzi A. Ahmed's statement that he did not have bulk cash in his residence was false. Law enforcement agents searched Ramzi A. Ahmed's residence and located $99,194.00 in U.S. currency consisting mainly of $100.00 bills, concealed in three different locations.

63. A Hope Mills Police Department official located a shoebox containing an undetermined amount of U.S. currency in the closet of bedroom #5, a DEA Task Force Officer located another undetermined amount of U.S. currency in the top shelf of the closet of the room designated bedroom #4 (the preponderance of the U.S. currency was located in bedroom #4), and an Homeland Security Investigations Task Force Officer located another undetermined amount of U.S. currency in the room designated bedroom #1, in the 2nd drawer of a white dresser. All the bedrooms were located on the second floor of the residence.

64. When law enforcement agents asked Ramzi A. Ahmed about the $99,194.00 in bulk cash, he denied any knowledge about the bulk cash the agents recovered.

65. A Hope Mills Police Department official deployed a K-9 trained to detect the presence of illegal narcotics and the K-9 positively alerted when it sniffed the different sets of U.S. currency independently. Investigators later combined the undetermined amounts into one exhibit for submission of an official account.

66. Ramzi A. Ahmed's statement on September 24, 2024, that he performs all management duties at NC Vape Zone was false or materially incomplete. Alhamzah Ahmed performs the majority of managerial duties at NC Vape Zone. Ramzi A. Ahmed is primarily involved with ownership duties and financial control of NC Vape Zone. Sources and individuals interviewed in the investigation have stated that Ramzi A. Ahmed, was often present at NC Vape Zone and involved in higher level functions; however, Alhamzah Ahmed would interact with most customers and employees, during the regular course of business.

67. Ramzi A. Ahmed's statement on September 24, 2024, that Zone Distribution, Inc. was "now closed" was false or materially incomplete. On January 6, 2025, Ramzi A. Ahmed used a business check drawn on a Zone Distribution Inc. account to place a security deposit in the amount of $15,261.75 and a first month's rent of $5,087.25 to BPG Management, LLC.

68. BPG Management, LLC is the property management company that owns 2201 Brentwood Road, Suite 108, Raleigh, North Carolina, and surrounding corporate properties.

69. BPG Management, LLC leased property located at 2201 Brentwood Road, Suite 108, Raleigh, North Carolina, to Ascend Brand, LLC (hereinafter, "Ascend").

70. Ascend is linked to Alhamzah Ahmed and has served as a continuation of NC Vape Zone, selling the types of products that were previously seized from NC Vape Zone, and determined to be marijuana.

71. Following the search warrant at NC Vape Zone and the seizure of a large quantity of THC-related products in September 2024, Alhamzah Ahmed and Bashar Mshaka, a former employee of NC Vape Zone and close friend of Alhamzah Ahmed, with financial support from Ramzi Ahmed, began operating an additional warehouse using the Ascend name, around January 2025.

72. Ascend continued to distribute marijuana and related marijuana products from that time through at least February 2026.

73. In May 2025, law enforcement agents executed a search warrant at the Ascend warehouse and seized hundreds of boxes of THC products, including pre-rolls and loose flower.

74. The products seized from Ascend matched the description of products previously purchased via controlled purchase from Ascend, seized from NC Vape Zone, and those seized from earlier controlled purchases, which were tested and determined to be marijuana.

75. The products seized from Ascend were also tested and determined to be marijuana.

76. The investigation determined that Ascend continued to traffic marijuana and marijuana-related products after the Ascend search warrant and being informed by law enforcement that the products were being seized due to being determined to be controlled substances, per lab testing. On July 1, 2025, a grand jury issued an indictment, which remains partially sealed, *United States v. Wu*, Case 5:25-cr-00161-M-RJ (E.D.N.C. July 1, 2025), that charged Wu and others with drug and money laundering conspiracy, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1956(h).

77. On June 23, 2026, a grand jury issued an indictment, which remains partially sealed, *United States v. Alhamzah Alrowhani Ahmed*, Case 5:26-cr-00109-M-RN (E.D.N.C. June 23, 2026), that charged Alhamzah Ahmed and others with drug and money laundering conspiracy, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1956(h), and related charges.

78. Based on the training and experience of IRS-CI Special Agent James M. Dailey, an investigative law enforcement officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code, the facts and the circumstances set forth above constitute probable cause for the seizure, arrest, and forfeiture of the defendant properties and are sufficient to support a reasonable belief that the government will meet its burden of proof at trial that the defendant property properties should be forfeited.

## PRAYER FOR RELIEF

WHEREFORE, in accordance with Supplemental Rule G(3)(b)(i), Plaintiff requests that the Clerk issue a warrant of arrest *in rem* for Defendants; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring Defendants be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted, this 9th day of September 2026.

W. ELLIS BOYLE
United States Attorney

BY: */s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office, Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Email: mike.jamese@usdoj.gov
N.Y. Reg. No. 2481414
Attorney for United States

**VERIFICATION**

I, James M. Dailey, Special Agent, Internal Revenue Service-Criminal Investigations, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture is based on reports and information known and/or furnished to me and to the best of my information and belief, is true and correct.

James M. Dailey
Special Agent
Internal Revenue Service-Criminal Investigation